# United States District Court

NORTHERN DISTRICT OF WEST VIRGINIA

FILED
MAY 2 4 2005
J.S DISTRICT COURT

UNITED STATES OF AMERICA

V.

LAWRENCE ANTHONY FRANKLIN

**CRIMINAL COMPLAINT**

CASE NUMBER: 3:05 M 9

I, Terry Grzadzielewski, the undersigned complainant being duly sworn state the following is true and correct to the best of my knowledge and belief. On or about June 30, 2004 in or near Kearneysville, Jefferson County and in the Northern District of West Virginia, the defendant, LAWRENCE ANTHONY FRANKLIN, did knowingly and unlawfully possess classified United States government documents relating to the national defense and willfully retained them and failed to deliver them to the officer or employee of the United States entitled to receive them, as more fully described in the attached Affidavit, in violation of Title 18 U.S.C. §793(e).

I further state that I am a Special Agent with the FBI, currently assigned to the Martinsburg Resident Agency of the Pittsburgh Field Office, and that this complaint is based on the following facts:

See Attached Affidavit.

Continued on the attached sheet and made a part hereof.   ☒ Yes  ☐ No

_____
Signature of Complainant

Sworn to before me, and subscribed in my presence

May 24, 2005          at  Martinsburg, WV
Date                      City and State

_____
David Joel, United States Magistrate Judge

IN THE UNITED STATES DISTRICT COURT FOR THE

NORTHERN DISTRICT OF WEST VIRGINIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CRIMINAL NO. 3:05m 9 |
| | ) | |
| LAWRENCE ANTHONY FRANKLIN | ) | |

### AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT AND ARREST WARRANT

I, Terry Grzadzielewski, being duly sworn, hereby state:

1. I am a Special Agent of the Federal Bureau of Investigation (FBI), and have been so employed for over thirteen years. I am presently assigned to the Martinsburg, West Virginia, Resident Agency of the Pittsburgh Field Office. I am assigned to a squad responsible for foreign counterintelligence investigations, to include counterespionage matters, in the State of West Virginia. I have experience and training in the proper handling of classified materials and the investigation of crimes related to the improper handling and disclosure of classified information.

2. As more fully described below, I respectfully submit that LAWRENCE ANTHONY FRANKLIN ("FRANKLIN") violated 18 U.S.C. § 793(e) in that, being in unauthorized possession of and control over documents, writings and notes relating to the national defense, he did willfully retain the same and fail to deliver it to the officer or employee of the United States entitled to receive it.

3. Information in this affidavit is based on my personal knowledge and on information provided to me by other law enforcement officers during this investigation. This

affidavit relies on information provided by agencies of the United States Intelligence Community, which have cooperated with this investigation. This affidavit is not intended to be a complete statement of the investigation against FRANKLIN, but is for the limited purpose of setting out probable cause in support of a complaint charging him with a violation of Title 18, United States Code, Section 793(e)(willful retention of national defense documents) and a warrant for his arrest.

## Background

4. FRANKLIN is a United States citizen. FRANKLIN possesses a bachelor's degree, master's degree and a PhD. in Asian Studies. FRANKLIN resides in Kearneysville, West Virginia. He has been employed by the United States Department of Defense (DoD) since 1979.

5. FRANKLIN, at all times relevant to this affidavit, held a Top Secret security clearance with access to Sensitive Compartmented Information (SCI). FRANKLIN's security clearance and access to classified information was suspended on June 30, 2004.

6. FRANKLIN has served in the United States Air Force Reserves (USAFR) since August 14, 1976. He currently holds the rank of Colonel. FRANKLIN was assigned to the Defense Intelligence Agency (DIA) Defense HUMINT Services and held a Top Secret clearance with SCI access.

7. Throughout his employment with the United States Government, and as recently as on or about July 17, 2001, FRANKLIN has repeatedly signed written agreements attesting to his understanding the law and rules governing the handling of classified information and acknowledging his duty to safeguard classified information.

8. On or about January 9, 2003, FRANKLIN signed a Request for Issuance of DD Form 2501, Courier Authorization. Through this form FRANKLIN requested, and was granted, authorization to carry classified information. Pursuant to this authorization, FRANKLIN was permitted to carry classified information up to the Top Secret level within the "Washington/Baltimore/Richmond Area (WBRA)." The definition of WBRA includes various cities and counties in Virginia and Maryland and the District of Columbia. By the document's own terms, WBRA does not include any portion of West Virginia.

## Classified Information

9. Classified information is defined by Executive Order 12958, as amended by Executive Order 13292, as follows:

> Information in any form that (1) is owned by, produced by or for, or under the control of the United States Government; (2) falls within one or more of the categories set forth in Section 1.5 of the Order (including intelligence sources or methods, cryptology, military plans, and vulnerabilities or capabilities of systems, installations, projects, or plans related to the national security), and (3) is classified by an original classification authority who determines that its unauthorized disclosure reasonably could be expected to result in damage to the national security.

Under the Executive Order, the designation "Confidential" shall be applied to information, the unauthorized disclosure of which reasonably could be expected to cause damage to national security. The designation "Secret" shall be applied to information, the unauthorized disclosure of which reasonably could be expected to cause serious damage to national security. The designation "Top Secret" shall be applied to information, the unauthorized disclosure of which could reasonably be expected to cause exceptionally grave damage to the national security. Access to classified information at any level may be further restricted through compartmentation

in SCI categories. Classified information, of any designation, may only be shared with persons determined by an appropriate US Government official to be eligible for access to classified information, who have signed an approved non-disclosure agreement and who possess a need to know. If a person is not eligible to receive classified information, classified information may not be disclosed to that person.

10. 18 U.S.C. § 793(e) prohibits any person, having unauthorized possession of, access to, or control over any document, writing or note relating to the national defense from willfully retaining that document and failing to deliver it to the officer or employee of the United States entitled to receive it.

### FRANKLIN's Improper Handling of Classified Information

11. In or about April 1997, Franklin removed Top Secret documents from their proper place of storage without authorization and in or about October, 1997, FRANKLIN admitted to DIA Special Agents that on several occasions he had removed classified documents from the office and took them home.

12. In or about July 1998, FRANKLIN was issued a letter related to his unauthorized removal and storage of classified materials and was again advised of the rules and law regarding proper treatment and handling of classified information and instructed to comply with those rules and laws.

### Classified Documents in FRANKLIN's Residence

13. On June 30, 2004, pursuant to FRANKLIN's written consent, and a United States court-authorized criminal search warrant issued in support of this investigation, a search was conducted of FRANKLIN's residence in Kearneysville, West Virginia. Approximately 83

classified U.S. Government documents were found at his residence, each bearing markers identifying the documents as classified U.S. Government documents. These document relate to the national defense. Of these 83 documents, approximately 38 were classified Top Secret, approximately 37 were classified Secret, and approximately eight were classified Confidential. Approximately nine of these documents were found on computer disks located in FRANKLIN's residence. The dates of these documents spanned three decades.

14. Included in the 83 documents discovered at his residence were the following six documents, which serve as the basis for the request for a criminal complaint:

| Title/Description | Classification | Date |
| --- | --- | --- |
| Terrorist Threat Integration Center Terrorism Situation Report | Top Secret / SCI | 8 June 2004 |
| Central Intelligence Agency document concerning Al-Qa'ida | Top Secret / SCI | 9 June 2004 |
| Central Intelligence Agency document concerning Usama Bin Laden and Al-Qa'ida | Secret / SCI | 7 October 2003 |
| Central Intelligence Agency document concerning Al-Qa'ida | Secret | 12 May 2004 |
| Central Intelligence Agency Memorandum on Iraq | Secret | 4 June 2004 |
| Central Intelligence Agency Defense Executive Intelligence Review concerning Terrorists | Secret | 10 June 2004 |

15.     A classification review of each of the documents listed in paragraph 14 has been conducted by the appropriate intelligence agency for each document. Each of the documents listed in paragraph 14 is currently classified and was classified at the level indicated in this affidavit at the time they were found in FRANKLIN's residence.

16.     On or about June 30, 2004, FRANKLIN submitted to a voluntary, non-custodial interview with FBI Special Agents. In that interview FRANKLIN was told that the FBI had a search warrant to search his residence after the interview and was asked if he would consent to that search. FRANKLIN consented to the search and signed a written consent form. FRANKLIN was present for the search. FRANKLIN provided verbal consent to search his residence. In the course of the interview, FRANKLIN admitted that he had taken classified documents to his residence the week of June 23, 2004.

17.     On July 13, 2004, FRANKLIN voluntarily came to the FBI, Washington Field Office and reviewed items seized from his office and residence. FRANKLIN did not dispute that the documents were found in his residence. After reviewing the items presented to him, FRANKLIN admitted that he recently took home approximately thirty-four documents, dated between October 2003 and June 2004, which were classified either Secret or Top Secret, some with additional SCI access levels. Additionally, in this interview, FRANKLIN admitted that he may have disclosed information from one of the classified documents found at his residence to a foreign official who was not authorized to receive that information.

18.     At no time was FRANKLIN's residence an authorized location for the storage of classified U.S. Government documents. Additionally, the documents were stored throughout the residence in open and closed storage containers with at least one document in plain view.

## Conclusion

19. Based on the foregoing, I respectfully submit that there is probable cause to believe that Lawrence Anthony Franklin knowingly and unlawfully possessed classified US government documents relating to the national defense and willfully retained them and failed to deliver them to the officer or employee of the United States entitled to receive them in violation of 18 U.S.C. § 793(e). I request that a criminal complaint be issued charging LAWRENCE ANTHONY FRANKLIN with a violation of Title 18, United States Code, Section 793(e) and that a warrant for the arrest of Lawrence Anthony Franklin be issued.

Terry Grzadzielewski
FBI - Special Agent

Subscribed and sworn to before me this 24th day of May, 2005

David J. Joel
United States Magistrate Judge